UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

DEBORAH V. ADAMS,

                Plaintiff,

v.

KROGER LIMITED PARTNERSHIP I, and
REPUBLIC NATIONAL DISTRIBUTING
COMPANY, LLC

                Defendants.

Action No. 3:11−CV−141

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion for Judgment as a Matter of Law ("Motion"), made orally during the jury trial on March 6, 2012, by Defendant Kroger Limited Partnership I ("Kroger"), and Defendant Republic National Distributing Company, LLC ("Republic"). As stated from the bench, the Motion is GRANTED. This Memorandum Opinion sets forth, in further detail, the rationale for the Court's decision.

### I.    BACKGROUND

Plaintiff Deborah Adams initiated this negligence action against Kroger and Republic for injuries she sustained when she fell at a grocery store operated by Kroger on Hicks Road in Chesterfield County ("Kroger store"). Republic is a wine distributor that supplies wine products to Kroger.

The surveillance video indicates that there are three parallel double-sided wine shelves ("gondolas") along two aisles at the Kroger store. Wine bottles are displayed on both sides of the wine shelves. There is an end unit which also displays wine bottles on the front-end and back-end of each wine shelf. The two wine aisles run parallel to each other and the front-end of the aisles are

1

intersected by a main aisle which runs towards the front entrance/exit of the Kroger store. On the right side of the main aisle is a wall unit which displays other drinks.

The following diagram attempts to illustrate the layout of the area where the incident occurred.



On August 18, 2009, Gary Judd, an employee of Republic, was at the Kroger store restocking wine bottles on the wine shelves. During this process, Judd accidentally dropped a bottle of wine, spilling its content in the area covering the intersection of the front-end unit of the first wine shelf and the main aisle. Judd secured the area by placing some boxes around the spill and then obtained a mop and bucket with water from the backroom (the area where Kroger receives shipments). He swept up the broken bottle pieces and mopped the area where the wine bottle dropped. In addition, Judd placed a yellow caution cone in the area.

On that same day and approximately 18 minutes after the spill occurred, Plaintiff Adams entered the wine aisles at the Kroger store to purchase a bottle of wine and perused the three wine shelves for a few minutes. The surveillance video indicates that Adams entered the first wine aisle

2

from the back-end of the aisle. She walked toward the main aisle and made a right turn as she entered the main aisle. She then made another right turn into the second wine aisle. The video also shows that Adams scanned the wine shelves in the second aisle and then made a left turn as she exited the second aisle into the main aisle. She took a few steps from the intersection of the front-end of second aisle and the main aisle and approached the area that intersects the front-end of the first aisle and the main aisle.[1] As she entered this area, the same area where the spill earlier occurred, Adams fell.[2] When Adams fell, she beckoned to Judd who then approached her. Judd asked her if she was hurt and he went to the front desk to inform a Kroger employee of the accident. Subsequently, Judd returned and assisted Adams to the front of the store. Charlie Gattusso, the assistant manager on duty at the time, spoke with her about the incident and filled out a Customer/Incident Report of the accident.

Adams filed a complaint against Kroger in the Circuit Court for the County of Chesterfield seeking one million dollars in damages.[3] On August 8, 2011, Adams filed an Amended Complaint which named Republic as a defendant. On February 27, 2012, the Court denied Kroger's motion for summary judgment on the basis that viewing the facts in the light most favorable to Adams, there was sufficient evidence for a reasonable jury to determine: (1) that Kroger was vicariously liable for the injuries Adams sustained; and (2) whether Adams was contributorily negligent. (ECF No. 43.)

---

[1] The surveillance video indicates that Adams was looking at the end-unit of the second wine shelf.

[2] The Court goes into painstaking detail of the occurrence because at the summary judgment phase of this litigation, and as evidenced in the memorandum opinion denying Defendant Kroger's motion for summary judgment, it was represented to the Court that Plaintiff fell as she "turned the aisle." (Am. Compl. ¶ 11.)

[3] Adams also filed the complaint against the Auburn Realty, LLC, owner of the property where the Kroger store operates, and Charlie Gattuso. On October 26, 2011, however, the parties filed a joint stipulation of dismissal dismissing Auburn Realty, LLC from the action. Additionally, May 17, 2011, after Kroger and Gattuso removed the action to this Court, the Court held that Gattuso was fraudulently joined and dismissed him from the action. (Mem. O. Granting M. Dismiss & Denying M. Remand, ECF No. 10.)

The case proceeded to trial on March 5, 2012 and continued to the next day. On March 6, 2012, after the close of Adams' evidence, Defendants Kroger and Republic moved for judgment as a matter of law.[4]

## II. LEGAL STANDARD

A district court may grant a motion for judgment as a matter of law if after an issue has been fully heard during a jury trial, the "court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Essentially, if after considering all of the evidence presented and viewing all reasonable inferences in a light most favorable to the non-movant, the court determines that the facts and inferences point so strongly in favor of the movant that a rational jury could not arrive at a contrary verdict, the Court must grant the movant's motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-51 (2000).

## III. DISCUSSION

### A. Liability of Kroger

For the reasons that follow, the Court finds that Adams failed to provide sufficient evidence for a trier of fact to conclude that Kroger was negligent in this action. There are two possible negligence theories under which Kroger could be held liable to Adams—independent and vicarious liability.[5] *See S. Floors & Acoustics v. Max-Yeboah*, 267 Va. 682, 687 (2004). First, to find Kroger independently liable, Adams must show by a preponderance of the evidence that: (1) Kroger owed Adams a duty; (2) the condition complained of constituted an unsafe condition; (3) the unsafe

---

[4] Defendants asserted the defense of contributory negligence. The Court, however, does not reach this issue because the Court disposes of this case on other grounds. Moreover, contributory negligence is an affirmative defense and Defendants were not presented with the opportunity to put on evidence on this issue because the Court granted Defendants' Motion for Judgment as a matter of law at the close of Adams' evidence.

[5] Because the Court finds that neither Republic nor Judd is negligent, *see infra* pp. 8-9, Kroger cannot be vicariously liable for the non-negligent acts of Republic or Judd, irrespective of the relationship between Kroger and Judd or Republic. Yet, the Court engages in this analysis as though Republic or Judd was negligent, to fully exhaust the arguments presented to the Court.

condition proximately caused the accident to occur; (4) Kroger had actual or constructive notice of the defect and failed to correct the problem within a reasonable period of time; and (5) Adams suffered damages. *See Griffin v. Wal-Mart Stores*, No. 3:94-CV-941, 1995 U.S. Dist. LEXIS 6507, at *5-6 (E.D. Va. April 10, 1995) (citations omitted).

> It is beyond dispute that Kroger, as an
>
> an owner or occupier of real property owes to [Adams] the duty to exercise reasonable care to make the premises safe. However, [Kroger] is not an *insurer* of the safety of the premises. [Kroger] has a duty to warn of hidden dangers or defects in the premises but only to the extent that [Kroger] has knowledge thereof or should, in the exercise of reasonable care, have such knowledge.

*Gauldin v. Virginia Winn-Dixie*, 370 F.2d 167, 169 (4th Cir. 1966). Without delving into the other elements, it is clear that the dispositive factor of Adams' *prima facie* independent liability case is whether Kroger had notice. The unquestionable evidence presented at trial is that Kroger lacked actual or constructive notice of the spill which occurred in its store or Judd's attempt to clean the spill. Actually, what is clear is that the first time Kroger or any of its agents had knowledge of the spill was after Adams fell and Judd went to the front to inform a Kroger employee. Therefore, because Kroger had no actual and constructive notice of the spill or Judd's attempt to clean it, Kroger cannot be held independently liable for Adams' injuries.

As there is no evidence of independent liability, Adams may recover only if it can establish some basis for finding Kroger vicariously liable based on its relationship with Republic and/or Judd. The traditional situations which allow for vicarious liability are if Republic or Judd were an employee or independent contractor of Kroger.

An employee or independent contractor is a hired party and what distinguishes both relationships is the level of control the hiring party exercises over the hired party. As explained by the Supreme Court of Virginia:

> If under the contract the party for whom the work is being done may prescribe not only what the result shall be, but also direct the means and methods by which the

> other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor.

*Craig v. Doyle*, 179 Va. 526, 531 (1942). Both the employer/employee and the employer/independent contractor relationship depend in part on the ability of the employer to exercise either some level of control or supervisory authority over the hired party.

Here, there is no evidence that Kroger hired Republic or Judd to perform any tasks. There is no evidence that Kroger can direct the means and methods by which Republic or Judd could do their work. There is no evidence that Kroger can fire Republic or Judd. There is no evidence that Kroger can even specify the results—Judd could restock wine bottles only on the space allocated to Republic, but Republic or Judd could determine how many bottles to put on the shelves, when to restock the shelves, whether to restock the shelves. No evidence of an express or implied contract between Kroger and Republic establishing the nature of their relationship was put forth. In short, there is no evidence to support the conclusion that Republic or Judd were either an employee or independent contractor of Kroger. Rather, the evidence shows that Republic is a vendor that supplies products to Kroger, and Kroger is Republic's customer. There is no evidence to suggest otherwise.

The Court notes that at the summary judgment phase of this action, it assumed, as Kroger suggested, that the relationship between Kroger and Republic or Judd was at most that of owner/independent contractor. The Court granted summary judgment anticipating that evidence would be forthcoming at trial that could establish the relationship between Kroger and Republic or Judd. The burden of producing evidence to establish the existence of an owner/independent contractor relationship is on Adams. *See Barnes v. Hampton*, 149 Va. 740, 743 (1928) (stating that the plaintiff had the burden of proving the existence of a master-servant or agency relationship); *accord DNM, Inc. v. S. H. Clark & Sons Roofing, Inc.*, 1992 Va. LEXIS 102, *3 (Va. S. Ct. 1992); *Raney v.*

6

*Barnes Lumber Corp.*, 195 Va. 956, 966 (1954). The Court finds that Adams failed to put on any evidence of the nature of the relationship between Kroger and Republic or Judd. The term "independent contractor" has a unique definition in the law, and in the absence of sufficient evidence as to the nature of the relationship between Kroger and Republic or Judd, the Court refrains from affixing the term to the relationship. As stated, the burden of production rests on Adams, *see Parham v. Albert*, 244 Va. 73, 76 (1992) (quoting *Lawrence v. Snyder*, 229 Va. 139, 142 (1985), and Adams fails to meet this burden. Therefore, the Court cannot conclude that either Republic or Judd is an employee or independent contractor of Kroger.

This conclusion is dispositive of Kroger's liability. Nonetheless, assuming *arguendo* Republic or Judd are independent contractors, to recover, Adams must bring this case within one of the exceptions to the general rule of non-liability of owners for independent contractor's torts. The general rule is that employers are not liable for the negligent acts of their independent contractors. *Kesler v. Allen*, 233 Va. 130, 134 (1987). The list of exceptions to this rule is laid out clearly under Virginia law. *See id.* (listing exceptions to the general non-liability for independent contractor's torts). One exception which allowed this action proceed past the summary judgment phase was the non-delegable duty exception. Under this exception, an owner or occupier of a premise cannot delegate to an independent contractor its common law duty to maintain its premises in a reasonably safe condition. *Love v. Schmidt*, 239 Va. 357, 361 (1990). The evidence at trial indicates that Kroger did not attempt to delegate to Republic or Judd its duty to maintain its premises in a reasonable safe condition. Republic and Judd are engaged in the business of supplying wine products to Kroger. At trial, testimony from the Kroger store manager revealed that if a Kroger employee saw the spill caused by Judd, the Kroger employee would clean the spill and not require Judd to clean the spill. Kroger's actions would be akin to what it would have done had the spill been caused by a customer

in its store. Hence, the Court cannot conclude that Kroger attempted to delegate to Republic or Judd its duty to maintain its premises in a reasonably safe condition.

Because the evidence fails to bring Adams' case within any exception to the non-liability for independent contractor's torts, the general rule applies and Kroger is not liable for the actions of Republic or Judd. Based on all these, the Court finds that Kroger cannot be held liable, either independently or vicariously, for the injuries Adams sustained from her fall at the Kroger store.

### B. Liability of Republic

The putative liability of Republic flows from actions its employee, Judd. The issue of Judd's liability is a matter of simple or ordinary negligence. In ordinary negligence cases, a plaintiff must prove the existence of a legal duty; a breach of that duty; that the breach caused harm to the plaintiff; and that the plaintiff suffered damages. *Atrium Unit Owners Ass'n v. King*, 266 Va. 288, 293, (2003).

With regard to Judd's duty, when he dropped the bottle, he owed a duty to do what a reasonable person would do to protect others from harm. Thus, the issue is whether Judd's actions were reasonable. The record fails to set forth the standard of care of what a reasonable person in Judd's circumstances would do, and also fails to support a conclusion that Judd breached a duty. When he accidentally dropped the bottle, he secured the area with boxes. He swept up the broken glass, obtained a mop and bucket and mopped the floor. Afterwards, he put a yellow caution cone in the area. All of these beg the question: what else was Judd supposed to do given what he had done? There is no evidence on the record, expert or otherwise, that establishes that Judd breached his duty of care.

Adams argues that she does not "know of any expert that is an expert on cleaning up a spill in a store." The jury's verdict, however, "cannot rest upon speculation and conjecture." *Doe v. Houser*, 213 Va. 617 (1973). Adams failed to produce evidence of something else Judd should have

done, and the Court will not allow the jury to speculate on what that might have been. For these reasons, the Court finds that Adams failed to satisfy her burden of proving that Judd breached a duty to her. Therefore, the Court GRANTS Defendants' Motion.

## IV. CONCLUSION

For the above reasons, the Court GRANTS Defendants' Motion for Judgment as a Matter of Law.

Let the Clerk send a copy of this Memorandum Opinion to all parties of record.

An appropriate order will accompany.

> _____/s/_____
> James R. Spencer
> United States District Judge

ENTERED this __26th__ day of March 2012.